FILED
JAMES BONINI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, DAYTON, OHIO

2010 DEC 28 PM 2: 22

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WESTERN DIV DAYTON

| | |
|---|---|
| BAILEY BROADBENT<br>2537 Mayfair Road<br>Akron, Ohio 44312<br><br>and<br><br>NICHOLAS BERGER<br>972 Regatta Bay Drive #202<br>Orange City, Florida 32763<br><br>and<br><br>MELANIE BERGER<br>972 Regatta Bay Drive #202<br>Orange City, Florida 32763<br><br>and<br><br>LEE ANN SCHEONROCK<br>7757 Rolling Meadows Drive<br>Kalamazoo, Michigan 49009<br><br>and<br><br>JOSEPH TRITOLA<br>6859 West Fitzwater Road<br>Brecksville, Ohio 44141<br><br>       Plaintiffs<br>vs.<br><br>AMERICANS FOR AFFORDABLE<br>HEALTHCARE, INC.<br>c/o Corporate Creations Network, Inc.,<br>Statutory Agent<br>119 East Court Street<br>Cincinnati, Ohio 45202<br><br>and | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CASE NO. **1 : 1 0 cv 9 4 3**

JUDGE *Chief Judge Susan J. Dlott*

**COMPLAINT**

**Jury Demand Endorsed**

NATIONAL ASSOCIATION OF                 )
CONSUMERS DIRECT                        )
2508 Highlander Way, Suite 220          )
Carrollton, Texas 75006                 )
                                        )
and                                     )
                                        )
SPENCER & ASSOCIATES, LLC               )
1 South Limestone Street, Suite 301     )
Springfield, Ohio 45502-1272            )
                                        )
and                                     )
                                        )
UNIFIED LIFE INSURANCE COMPANY          )
7201 West 129th Street, Suite 300       )
Overland Park, Kansas 66213             )
                                        )
and                                     )
                                        )
INTEGRATED INSURANCE                    )
MARKETING, INC.                         )
c/o Gary Karns, Statutory Agent         )
1618 Boettler Road                      )
Uniontown, Ohio 44685                   )
                                        )
and                                     )
                                        )
CEO CLUBS, INC.                         )
15 Broad Street, Suite 1120             )
New York, New York 10005                )
                                        )
and                                     )
                                        )
ASSOCIATION FOR INDEPENDENT             )
MANAGERS, INC.                          )
3773 Central Avenue                     )
St. Petersburg, Florida 33717           )
                                        )
and                                     )
                                        )
PRESIDENTIAL LIFE INSURANCE CO.         )
69 Lydecker Street                      )
Nyack, New York 10960                   )

and                                                   )
                                                      )
PROFESSIONAL LIFE INSURANCE CO.   )
175 Addison Road                                      )
Windsor, Connecticut 06095                            )
                                                      )
and                                                   )
                                                      )
VIKING ADMINISTRATORS, LLC           )
5201 Kingston Pike Road, Suite 6-335       )
Knoxville, Tennessee, 37919                     )
                                                      )
and                                                   )
                                                      )
BRUCE SPENCER                               )
29 West Xenia Avenue                          )
Cedarville, Ohio 45314                           )
                                                      )
and                                                   )
                                                      )
GEORGE R. KATOSIC                        )
300 North Coit Road, Suite 350             )
Richardson, Texas 75080                       )
                                                      )
and                                                   )
                                                      )
NANCY HARRIS                               )
1 South Limestone Street, Suite 301        )
Springfield, Ohio 45502-1272                 )
                                                      )
and                                                   )
                                                      )
ASHLEY ATLEY                               )
1 South Limestone Street, Suite 301        )
Springfield, Ohio 45502-1272                 )
                                                      )
and                                                   )
                                                      )
CRAIG COOKE                                 )
220 Old Springfield Road                      )
South Charleston, Ohio   45368             )
                                                      )
and                                                   )
                                                      )

3

SEAN RYAN                                        )
443 West Leffel Lane                             )
Springfield, Ohio 45506                          )
                                                 )
and                                              )
                                                 )
CHRISTIE SPENCER                                 )
29 West Xenia Avenue                             )
Cedarville, Ohio   45314                         )
                                                 )
and                                              )
                                                 )
EVELYN SUMMERVILLE                               )
1 South Limestone Street, Suite 301              )
Springfield, Ohio 45502-1272                     )
                                                 )
and                                              )
                                                 )
TANNILE ORTIZ                                    )
1 South Limestone Street, Suite 301              )
Springfield, Ohio 45502-1272                     )
                                                 )
and                                              )
                                                 )
PAUL J. OLZESKI                                  )
1 South Limestone Street, Suite 301              )
Springfield, Ohio 45502-1272                     )
                                                 )
and                                              )
                                                 )
HARVEY REY                                       )
1 South Limestone Street, Suite 301              )
Springfield, Ohio 45502-1272                     )
                                                 )
and                                              )
                                                 )
DAVID SPENCER                                    )
1 South Limestone Street, Suite 301              )
Springfield, Ohio 45502-1272                     )
                                                 )
and                                              )
                                                 )

4

| JOHN DOES (1) TO (100) | ) |
|---|---|
| Identity and Address Unknown | ) |
| | ) |
| Defendants. | ) |

Plaintiffs Bailey Broadbent ("Broadbent"), Nicholas Berger ("N. Berger"), Melanie Berger ("M. Berger"), Lee Ann Scheonrock ("Scheonrock") and Joseph Tritola ("Tritola") state for their claims against the Defendants as follows:

## INTRODUCTION

1.      This case involves a multi-million dollar interstate insurance scam perpetrated by the Defendants against the Plaintiffs and other similarly situated people.

2.      The Defendants individually and collectively marketed and sold hospital indemnity insurance to members of various national organizations without having such insurance actually underwritten by any insurer and with the intent of collecting millions of dollars in premiums without paying any claims.  To accomplish their goals, the Defendants have continually set up and closed various sham corporations and organizations in order to conceal their actions and identities from the public and local governments.

3.      As explained below in detail, regulatory agencies in multiple states have brought enforcement actions against the Defendants and other related individuals and entities, who have acted in concert with the Defendants, to bring an end to the Defendants' practices.  Such regulatory actions, however, will not make the Plaintiffs whole for their losses.

4.      The Plaintiffs now bring this action against the Defendants to compel them to honor their legal obligations and to recover damages caused by the Defendants' acts and omissions.

## FACTS COMMON TO ALL CLAIMS

5.      Broadbent, M. Berger, Scheonrock and Tritola all suffer from cystic fibrosis which is an inherited chronic, terminal disease that affects the lungs and digestive system of about 30,000 children and adults in the United States.  While modern medicine has provided a myriad of treatments for cystic fibrosis, it has yet to provide a cure.  In the recent past, those suffering from cystic fibrosis typically died in childhood.  Today, they have a life expectancy of around 35 years.

6.      University Hospitals in Cleveland, Ohio is recognized as a world leader in the treatment of cystic fibrosis, and Broadbent, M. Berger, Scheonrock and Tritola regularly undergo lengthy in-patient treatments at University Hospitals related to cystic fibrosis.

7.      Because their physical conditions result in frequent lengthy hospitalizations that limit their ability to be fully employed, Broadbent, M. Berger (N. Berger is M. Berger's husband and collectively they are the "Bergers"), Scheonrock and Tritola became interested in hospital indemnity insurance programs that would provide cash payments for some of the time period that they were hospitalized.  Unlike, traditional major medical health insurance which directly pays providers for health care services and products, hospital indemnity insurance programs pay cash benefits directly to the insured for triggered events–such as being admitted to the hospital.  In this sense they are much simpler than traditional major medical health insurance.  For instance, a hospital indemnity insurance program might promise to pay $1,000 per day, up to a maximum of 100 days per year, for each day of in-patient hospitalization.[1]  If the insured were hospitalized for 30 days, the hospital

---

[1]The Ohio Department of Insurance Consumer Services website defines a "hospital indemnity policy" as one that "pays a fixed dollar amount for each day you are in the hospital, regardless of actual hospital bills."

*See* https://secured.insurance.ohio.gov/consumers/glossary/glossary.aspx

6

indemnity insurance program would pay $30,000.00 to the insured. One of the best known issuers of such insurance is AFLAC (which is not a party to this case) which regularly advertises such policies in conjunction with televised collegiate football programs.

8.     Because hospital indemnity insurance programs are not traditional major medical health insurance, they frequently do not have pre-existing condition exclusions. When pre-existing condition exclusions are included, they are typically limited to a certain time, such as 12 months, that may be reduced by "creditable coverage" within the meaning of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Likewise, because hospital indemnity insurance programs are not directly paying health care providers, but are instead providing cash benefits to insureds, such programs typically do not include coordination of benefits provisions under which multiple health care insurers might coordinate coverage to pay the insured's health care providers.

9.     Despite the differences with traditional major medical health insurance, hospital indemnity insurance programs are a form of insurance that remain regulated by the states.

10.     Hospital indemnity insurance programs are frequently offered as ancillary benefits to memberships with national organizations in exchange for a premium. For instance, membership in the Association for Advancement of Retired Persons ("AARP") guarantees that a person can join AARP's hospital indemnity coverage program upon payment of the required premium.[2] AARP is not an insurer or insurance agent, but partners with an insurer and its agents to market and provide such benefits to its members. The hospital indemnity insurance program is issued to the organization

---

[2] *See* https://www.myhospitalplan.com/?SourceCode=6NX&Over=OVER.

with the organizations members (and sometimes relatives) as classes of insureds. Such benefits are one of the main reasons why people join organizations such as AARP.

11. In this case, in 2008-2009, Broadbent, the Bergers, Scheonrock and Tritola each joined the National Association of Consumers Direct ("NACD") for the purpose of having access to its hospital indemnity insurance program. At the time, NACD's hospital indemnity insurance program was reportedly underwritten by Continental American Insurance Company ("CAIC") which provided generous benefits of up to $1,000.00 per day for hospitalization (Ex. 1).[3] At that time, NACD's hospital indemnity program provided, in pertinent part:

> **The Continental American HI Plus program provides indemnity benefits which:**
>
> • Supplements and pays in addition to any existing health insurance coverage by providing additional indemnity benefits to assist with out-of-pocket expenses, or high deductibles, associated with sickness or injury
>
> **Features**
>
> • Supplements any current plan by paying benefits regardless of any other insurance program you have.
> • Covers your entire family.
> • Provides benefits for expenses due to a covered injury or sickness.
> • Pays cash benefits directly to you or your assigned doctor or hospital.

(*Id.*)

12. In June of 2009, NACD began notifying its members, including Broadbent, the Bergers, Scheonrock and Tritola, through the U.S. Mail that effective June 30, 2009 CAIC would no longer be underwriting NACD's hospital indemnity insurance program (Ex. 2). NACD's letter stated:

---

[3]CAIC was recently acquired by AFLAC.

8

> This letter is provided to you to give you notice that the insurance program included in your HI Plus Membership is changing effective July 1, 2009. Your limited benefit health insurance program was provided by Continental American Insurance Company ("CAIC"), but after their initial one-year policy term from July 1, 2008 to June 30, 2009, CAIC is no longer providing coverage to NACD members.
>
> ***As a result NACD has secured coverage for NACD members in affiliation with Americans for Affordable Healthcare through Unified Life Insurance Company*** . . . You will receive a new certificate of coverage from Unified Life Insurance Company in the mail shortly after receipt of this letter. (Emphasis added).

(*Id.*)

13.     Shortly thereafter, NACD, Americans for Affordable Health Care ("AFAH") and Spencer & Associates, LLC ("Spencer & Associates," AFAH's third-party administrator) provided Broadbent, the Bergers, Scheonrock and Tritola with information regarding NACD's hospital indemnity program through the U.S. Mail, which explained the new hospital indemnity insurance program, in pertinent part, as follows:

(a)     "There are no pre-existing condition exclusions or waiting period unless noted."

(b)     "There are no pre-existing condition exclusions.  Members will be covered for any condition, disease or injury.  (Except pregnancy, if occurs before the time of enrollment)."

(b)     That the following benefits were available:

(i)     "Daily Hospital Confinement" which "pays the daily benefit selected for hospital confinement (resident bed patient) due to a covered injury or sickness beginning with the first day up to 100 days"--the scheduled benefit is "$1,000 per day. Maximum 100 days"; and

(ii)    "Daily Hospital ICU/CCU" which "pays in addition to the daily hospital confinement benefit above"--the scheduled amount is "$1,000 per day.  Maximum 5 days per confinement"; and

      (iii)     "Hospital Admission Benefit" which "pays the amount shown for admission"--the scheduled amount is "$1,000";[4] and

      (iv)     "Office Visit" which "pays specified amount for treatment in physician's office or out of hospital facility due to a covered sickness or accident"–the scheduled amount is "$75 per visit Maximum of 5 visits per calendar year;" and

      (v)     "Preventative Care" which "pays for visit if neither injured or sick"–the scheduled amount is "$100 maximum".

("AFAH Plan," Ex. 3).

14.    Shortly thereafter, NACD, AFAH and Spencer & Associates provided Broadbent, the Bergers, Scheonrock and Tritola, through the U.S. Mail, with membership cards and materials related to the AFAH Plan (Ex. 4). However, NACD, AFAH and Spencer & Associates never provided the actual insurance certificates or policies for the AFAH Plan. No one ever informed Broadbent, the Bergers, Scheonrock and Tritola that an insurer other than Unified Life Insurance Company ("ULIC") was underwriting the AFAH Plan.

15.    Each month, and at all times pertinent to this case, NACD, AFAH and/or Spencer & Associates electronically withdrew premiums of several hundred dollars directly from the personal bank accounts of Broadbent, the Bergers, Scheonrock and Tritola to pay for the hefty premiums for AFAH Plan. Broadbent, the Bergers, Scheonrock and Tritola fully performed all of their obligations under the AFAH Plan.

16.    From September 1, 2009 until the present, Broadbent, M. Berger, Scheonrock and Tritola submitted in-patient hospitalization claims in full compliance with all requirements of the AFAH Plan as follows:

---

[4]Conflicting materials were sent on the applicability of Hospital Admission Benefit.

(a)     Broadbent--52 days of hospitalization/ICU;

(b)     Scheonrock--64 days of hospitalization/ICU;

(c)     Tritola–over 100 days of hospitalization/ICU (100 days are the maximum under the AFAH Plan);

(d)     Berger–57 days of hospitalization/ICU.

("Hospital Claims").

17.     From September 1, 2009 until the present, Broadbent and M. Berger submitted office visit claims in full compliance with all requirements of the AFAH Plan as follows: (a) Broadbent–4 visits ($325.00); (b) Berger–2 visits ($175.00)(collectively "Office Visit Claims").

18.     With respect to Broadbent's claims, the following interaction occurred:

(a)     On October 6, 2009, David Spencer ("D. Spencer") of AFAH and Spencer & Associates emailed Broadbent copies of the AFAH Plan benefits. (Ex. 3).

(b)     On November 9, 2009, Broadbent  filed her portion of the Hospital Claims for September 9, 2009 to October 13, 2009 in full compliance with all requirements of the AFAH Plan.

(c)     On December 30, 2009, Broadbent resubmitted documentation pertaining to the  September 9, 2009 to October 13, 2009 Hospital Claims because AFAH and Spencer & Associates claimed that they never received information pertaining to these claims.

(d)     On January 6, 2010, Broadbent filed a claim for four office visits taking place between November 18, 2009 to November 20, 2009 in full compliance with the AFAH Plan.

(e)     On January 25, 2010, AFAH and Spencer & Associates acknowledged receipt of the Hospital Claims and the Office Visit Claims and requested Broadbent submit an HCFA Claim Form with respect to her pending claims.

(f)     On February 7, 2010, Broadbent forwarded AFAH and Spencer & Associates completed HCFA Claim Forms for the Hospital Claims and the Office Visit Claims.

(g)    AFAH and Spencer & Associates did not respond to Broadbent in writing. Instead, Broadbent was advised by telephone that the Hospital Claims and the Office Visit Claims would not be paid because no amount was due and owing to her medical care providers–despite the fact that payments under the AFAH Plan were to be made directly to Broadbent regardless of whether any amount was due and owing to her medical care providers.

(h)    On March 15, 2010, Broadbent was again admitted and confined to a hospital because of her cystic fibrosis until April 2, 2010.

(i)    On April 13, 2010, AFAH and Spencer & Associates advised Ms. Broadbent that she would be receiving a declination letter regarding both the Hospital Claims and the Office Visit Claims. At the time of the filing of this Complaint, however, Broadbent still has not received a declination letter from AFAH or Spencer & Associates.

19.    With respect to the Bergers' claims, the following interaction occurred:

(a)    On November 6, 2009, the Bergers provided AFAH and Spencer & Associates with the hospital admission and confinement claims for August 21-30, 2009 in full compliance with all requirements of the AFAH Plan.

(b)    Shortly thereafter, the Bergers provided AFAH and Spencer & Associates with the hospital admission and confinement claims for October 14-27, 2009 in full compliance with all requirements of the AFAH Plan.

(c)    In February of 2010, the Bergers were requested to resubmit information on both the August 21-30, 2009 Claims and the October 14-27, 2009 Claims.

(d)    The Bergers were then informed that both sets of claims would be paid within 10 business days.

(e)    Subsequently, the Bergers were advised that they would be paid approximately $52.00. Although the Bergers dispute that this is all that must be paid under the AFAH Plan, not even this promised paltry amount was ever paid.

20.     Tritola and Scheonrock had similar interactions with AFAH and Spencer & Associates when they submittted their claims.  That is, they submitted claims covered by the AFAH Plan that were summarily denied by AFAH and Spencer & Associates.

21.     In March of 2010, AFAH, through the U.S. Mail, notified Broadbent, the Bergers, Scheonrock and Tritola that their "benefits plan has been terminated effective 2/28/2010." (Ex. 5). However, ULIC, NACD, AFAH and/or Spencer & Associates  continued to have premiums electronically withdrawn from the personal bank accounts of Broadbent, the Bergers, Scheonrock and Tritola.

22.     Broadbent, the Bergers, Scheonrock and Tritola were subsequently informed that their NACD memberships were being canceled and transferred to CEO Clubs, Inc. ("CEO Clubs") which would provide a hospital indemnity insurance program retroactively effective to October 1, 2009 with benefits comparable to the AFAH Plan. (Exs. 6-7).  The insurers alleged to be underwriting the CEO Clubs hospital indemnity insurance program were alternatively represented to be Presidential Life Insurance Company ("PLIC")(Ex. 6) and/or Professional Insurance Company ("PIC")(Ex. 7).

23.     In January of 2010, M. Berger had a series of telephone calls regarding her portion of the Hospital Claims and Office Visit Claims which can be summarized as follows:

(a)     NACD and AFAH informed M. Berger that her pending claims had been forwarded to CEO Clubs and the Association of Independent Managers ("AIM").

(b)     CEO Clubs and AIM advised that they had no relationship with AFAH and would not pay her pending claims.

24.     On May 8, 2010, Broadbent submitted her portion of the Hospital Claims for March 15, 2010 to April 2, 2010 to Spencer & Associates, Viking Administrators and CEO Clubs, and thereafter had a series of telephone conversations which can be summarized as follows:

    (a)     Spencer & Associates advised Broadbent it canceled her AFAH membership effective February 28, 2010 at NACD's request.  Any additional information needed to be provided by NACD.

    (b)     Upon calling NACD, NACD advised Broadbent that it had canceled her membership effective May 1, 2010.  NACD advised that it would refund the AFAH Plan premiums electronically withdrawn from Broadbent's bank account for April and May.  However, no refund has ever been provided.  Nor was there any explanation provided for where Broadbent's premiums went from September 2009 to March 2010.  Broadbent was advised that she was transferred to CEO Clubs it would provide benefits similar to the AFAH Plan.

    (c)     Upon calling CEO Clubs and AIM, Broadbent was advised that they had no relationship with AFAH and would not pay her portion of the Hospital Claims for March 15, 2010 to April 2, 2010 even though its hospital indemnity insurance program with NACD was effective October 1, 2009.

25.     In May-June, 2010, Broadbent, the Bergers, Scheonrock and Tritola were contacted through the U.S. Mail by Integrated Insurance Marketing, Inc. ("IIM") with respect to the AFAH Plan (Ex. 7).  IIM's correspondence stated:

EFFECTIVE: June 1st, 2010

Late 2009, Integrated Insurance Marketing, Inc. (IIM) was hired by a "consortium of firms" to perform its business services, generally speaking, new product implementation & consulting, marketing and market share growth with respect to health related products.

All seemingly proper documentation was provided and normal prudent due diligence was performed prior to accepting the office; the typical arrangements were set in place and the "consortium of firms" began accepting membership.

The initial test returned a very favorable result. However, shortly thereafter the "consortium of firms" who's major function in the offering, was generally speaking, providing the necessary membership customer service, maintain proper business relationships to make such offers to potential members, (i.e. Underwriting Carrier relationships and proper & timely claims processing with respect to the health component of your CEO Clubs Membership) suddenly began to fall way short on their obligations for reasons that are not being fully disclosed to the service providers and more importantly members like you.

This "consortium of firms" [sic] failure to uphold their responsibilities has left IIM in a situation to take immediate action to preserve the integrity of your health benefits and restore a proper and mutually beneficial healthcare relationship that you can count on. The "Consortium of Firms" has been removed from moving forward for failure to meet normal industry practices, satisfactory member service levels and various other reasons.

(*Id.*). The so-called "consortium of firms" has never been identified, nor have the errors or omissions committed by the "consortium of firms" been explained.

26. In the Spring of 2010, Broadbent, the Bergers, Scheonrock and Tritola retained the undersigned counsel ("Garner") to represent them with respect to their claims under the AFAH Plans. Garner issued letters to NACD, ULIC, AFAH, Spencer & Associates, Bruce Spencer ("B. Spencer") and others demanding payment under the AFAH Plan. (*See eg.* Ex. 8). In addition to requesting reconsideration of the declination of the claims made under the AFAH Plan, NACD, ULIC, AFAH, Spencer & Associates, B. Spencer were requested to provide: (a) a copy the AFAH Plan Group Policy and Certificate Booklet and/or Certificate of Coverage and Plan Document; (b) a copy of all unprivileged portions of claims files with respect to the Hospital Claims and the Office Visit Claims; (c) and a copy of the Group Policy and Certificate Booklet and/or Certificate of Coverage and Plan Document for the hospital indemnity insurance plan covering Broadbent, the Bergers, Scheonrock and Tritola on February 28, 2010.

27.     In response to Garner's demand letters:

(a)     ULIC denied underwriting the AFAH Plan and denied any relationship with NACD, Spencer & Associates and AFAH (Ex. 9).

(b)     Spencer & Associates and B. Spencer issued a correspondence from counsel (Ex. 10) which stated:

(i)     that ULIC had nothing to do with the AFAH Plan.

(ii)     that both the Hospital Claims and the Office Visit claims were:

(I)     "outside the terms and conditions of the policy due to the improper and unethical representations by the agent, which agent, by the way, my client does not know and has never met.  That agent was not licensed by my client or for my client" and

(II)     not covered because Broadbent, the Bergers, Scheonrock and Tritola did not have any out-of-pocket expenses.

(iii)     that the AFAH Plan "was designed to compensate for any out-of-pocket medical expenses only, such as deductibles and co-insurance.  In other words, it is not similar to an AFLAC type of policy."

(c)     Neither AFAH nor NACD responded.

(d)     No one had forwarded the insurance information requested in the demand letters.

28.     Subsequently, Garner discovered that, AFAH, Spencer & Associates, B. Spencer, AIM, CEO Clubs and others closely related to or affiliated with them, including, but not limited: Affinity Group Benefits Association, Inc.; American Trade Association; Beema-Pakistan Assurance; Ltd; Key Benefits Administrators, Inc.; National Alliance of Associations; Serve American Assurance Ltd.; David Clark; Obed Kirkpatrick; Bart S. Posey; Richard Bachmann; Association of Franchise and Independent Distributors; Smart Data Solutions; have been the subject of regulatory

16

investigations and actions in multiple states with respect to participation in health insurance scams similar to the AFAH Plan, including, but not limited to the following:

(a)     *In Re: Affinity Group Benefits, et al.,* Case No. 10-0115057C, in the Department of Insurance Financial Institutions and Professional Registration, State of Missouri, filed February 1, 2010 ("Missouri Action," Ex. 11). The Missouri Action identifies Spencer & Associates as the third party administrator for AFAH;

(b)     *In Re: Affinity Group Benefits Assn., et al.,* Case No. 1417, in the North Carolina Department of Insurance, North Carolina ("North Carolina Action," Ex. 12). The North Carolina Action resulted in a Final Consent Cease and Desist Order under which Spencer & Associates and B. Spencer admitted to violating North Carolina insurance laws by selling insurance without a license and selling policies issued by an unauthorized insurer;

(c)     *Tennessee Insurance Division v. American Trade Association, LLC, et al.,* Case no. 12.04-106577J, before the Commissioner of Commerce and Insurance of the State of Tennessee ("Tennessee Action," Ex. 13);

(d)     *In the Matter of American Trade Assn., et al.,* Case No. 2010-013, Before the Insurance Commissioner of the State of Arkansas ("Arkansas Action," Ex. 14);

(e)     *In the Matter of William Worthy, et al.,* Case No. 10-0301, before the Commissioner of Insurance of the State of Texas ("Texas Action," Ex. 15);

(f)     *In Re: Suitability of Bruce Spencer, et al.,* Consolidated Case No. LGL-0002021-H, before the State of Ohio, Department of Insurance ("Ohio Action," Ex. 16). The Ohio Action resulted in an order ordering restitution, imposing fines and permanently suspending the insurance licenses of Spencer & Associates and B. Spencer for engaging in a similar insurance scam to the AFAH Plan. The order is currently being appealed to the Court of Common Pleas for Clark County, Ohio.

          In pleadings filed in the Ohio Action:

          (i)      the Ohio Department of Insurance has alleged that the insurance scam involved in the Ohio Action "was replaced by

17

American's [sic] For Affordable Health Care. This organization functions in a manner identical to that of [the insurance scam in the Ohio Action] with the exception that major medical insurance is yet to be offered"; and

(ii)     Spencer & Associates and B. Spencer have acknowledged that the AFAH Plan and related plans constitute "a sophisticated web of deceit" which they claim they were unable to understand until regulatory authorities began to investigate.

29.     Additionally, news reports indicate that regulatory authorities in Kansas, Washington, Oklahoma, Maine, New Hampshire and Florida have ordered one or more of the foregoing individuals or entities to stop operating insurance scams similar the AFAH Plan. (Ex. 17).

30.     On July 23, 2010, Broadbent, the Bergers, Scheonrock and Tritola received notices from CEO Clubs related to the Texas Action which stated, in pertinent part, that CEO Club had agreed with the Texas Commissioner of Insurance to issue the following notices to CEO Club members:

Dear CEO Clubs and/or NABL member:

You are receiving this letter because records show that you joined either CEO CLUBS or its affiliated association, NABL, through the sales efforts of Integrated insurance marketing, Insurance Resource Group (IRG) and Access Health . . .

* * *

**REQUIRED NOTICE TO CEO CLUBS/NABL MEMBERSHIP**

The Agreement requires us to notify you, our membership, of the following:

✓     **THE CEO CLUBS, TDI AND NUMEROUS OTHER REGULATORS HAVE DETERMINED THAT THERE HAS BEEN AND IS NO ACTUAL AUTHORIZED HEALTH INSURANCE COVERAGE THROUGH** The Phoenix Insurance Company, Star UK/Phoenix, United States Contractors Trust and/or The Town and Country Life Insurance Company.

18

✓    **AS THERE IS NO ACTUAL INSURANCE, YOU ARE ADVISED TO IMMEDIATELY STOP PAYMENT (INCLUDING ANY AUTOMATIC DRAFTING) FOR ANY PREMIUMS FOR YOUR CEO CLUBS/NABL LIMITED MEDICAL BENEFITS CERTIFICATE. Warning: stopping payment may affect other benefits, including any prescription discount plan or other benefits.**

✓    **IF YOU HAVE ANY UNSUBMITTED CLAIMS UNDER YOUR CEO CLUBS/NABL CERTIFICATE YOU NEED TO FILE THE CLAIMS WITHIN THE NEXT 30 DAYS.** Your claims need to be submitted to CEO CLUBS/NABL Certificate Claims at P.O. Box 171, Avon Lake, OH 44012.

✓    There is no guaranty your claim will be paid if submitted.

(Ex. 18).

31.    Based upon the foregoing, the Defendants have individually and/or collectively damaged Plaintiffs by breaching their contracts of insurance with the Plaintiffs.

32.    Based upon the foregoing, the Defendants have individually and/or collectively damaged Plaintiffs through negligent and/or fraudulent misrepresentations upon which Plaintiffs justifiably relied to their detriment.

33.    Based upon the foregoing, the Defendants have individually and/or collectively damaged Plaintiffs through an insurance scam that was designed to induce Plaintiffs to pay substantial insurance premiums for insurance that did not exist and for which claims would never be paid.

34.    Based upon the foregoing, the Defendants have individually and/or collectively damaged Plaintiffs by violation of Ohio laws governing the relationships between insurers, insureds and insurance agents, including the common law tort of bad faith.

## PARTIES

35.     Broadbent is an individual residing in Akron, Ohio who has fully complied with all requirements of the AFAH Plan and has claims pending under the AFAH Plan.

36.     M. Berger is an individual residing in Orange City, Florida who has fully complied with all requirements of the AFAH Plan and has claims pending under the AFAH Plan.  She is the spouse of N. Berger.

37.     N. Berger is an individual residing in Orange City, Florida who has fully complied with all requirements of the AFAH Plan and has claims pending under the AFAH Plan.  He is the spouse of M. Berger.

38.     Scheonrock is an individual residing in Kalamazaoo, Michigan who has fully complied with all requirements of the AFAH Plan and has claims pending under the AFAH Plan.

39.     Tritola is an individual residing in Brecksville, Ohio who has fully complied with all requirements of the AFAH Plan and has claims pending under the AFAH Plan.

40.     AFAH is a corporation organized under Arizona law and principally located in Springfield, Ohio.  AFAH is responsible for implementing and handling claims under the AFAH Plan.  On information and belief, AFAH is an alter-ego of Spencer & Associates.

41.     NACD is a corporation organized under Texas law and principally located in Texas.  NACD marketed and sold the AFAH Plan.

42.     Spencer & Associates is a limited liability company organized under Ohio law and principally located in Springfield, Ohio.  Spencer & Associates is the third party administrator for AFAH and NACD

43. ULIC is a stock life insurance company incorporated under Texas law and principally located in Overland Park, Kansas. ULIC is represented to have underwritten the AFAH Plan.

44. IIM is a corporation organized under Ohio law and principally located in Akron, Ohio. IIM had marketing and agency responsibilities related to the AFAH Plan. IIM utilized Viking Administrators as a third-party administrator for various plans pertinent to this case.

45. CEO Clubs is a corporation located in New York that accepted membership of the Plaintiffs and offered them hospital indemnity insurance.

46. AIM is a corporation located in Florida that accepted membership of the Plaintiffs and offered them hospital indemnity insurance.

47. PLIC is an insurer organized under Delaware law and principally located in New York. On information and belief, PLIC was an underwriter of the hospital indemnity insurance program for CEO Clubs and/or AIM.

48. PIC is an insurer principally located in Connecticut. On information and belief, PIC was an underwriter of the hospital indemnity insurance program for CEO Clubs and/or AIM.

49. B. Spencer is an individual residing in Cedarville, Ohio. B. Spencer is an insurance agent and the principal of Spencer & Associates and AFAH.

50. George R. Katosic ("Katosic") is an individual and attorney residing in Richardson, Texas. According to the records of the Ohio Secretary of State, AFAH maintained its principal location at Katosic's offices in Richardson, Texas. Katosic registered AFAH in Ohio and identified himself as AFAH's "Secretary".

51. Nancy Harris ("Harris") is an individual residing in Springfield, Ohio. She is identified as the President of AFAH in the records of the Arizona Corporate Commission.

52.     Ashley Atley ("Atley") is an individual residing in Springfield, Ohio.  She is identified as the Secretary, the Treasurer and a Director of AFAH in the records of the Arizona Corporate Commission.

53.     Craig Cooke ("Cooke") is an individual residing in South Charleston, Ohio.  He is identified as the Vice-President and a Director of AFAH in the records of the Arizona Corporate Commission.

54.     Sean Ryan ("Ryan") is an individual residing in Springfield, Ohio.  He is identified as a Director of AFAH in the records of the Arizona Corporate Commission.

55.     Christie Spencer ("C. Spencer") is an individual residing in Cedarville, Ohio.  She is identified as  a Member of Spencer & Associates in the records of the Ohio Secretary of State.

56.     Evelyn Summerville ("Summerville") is an individual residing in Springfield, Ohio. Investigation has revealed that she is part owner of Spencer & Associates.

57.     Tannile Ortiz ("Ortiz") is an individual residing in Springfield, Ohio.  Investigation has revealed that she is the Manager of Spencer & Associates.

58.     Paul J. Olzeski ("Olzeski") is an individual residing in Springfield, Ohio. Investigation has revealed that he is employed by Spencer & Associates and was the founder of AFAH.  Olzeski is a co-respondent in the Ohio Action and has recently had his insurance agent's license permanently suspended by the Ohio Department of Insurance.

59.     Harvey Rey ("Rey") is an individual residing in Springfield, Ohio.  Investigation has revealed that he is employed by Spencer & Associates and was involved in the AFAH Plan.

60.     D. Spencer is an individual residing in Springfield, Ohio.  Investigation has revealed that he is employed by Spencer & Associates and was involved in the AFAH Plan.  On October 6,

2009, D. Spencer emailed Broadbent with specifics regarding the coverages provided by the AFAH Plan. (Ex. 3).

61.     John Does (1) to (100) are individuals and entities whose identities and addresses are currently unknown but who may have been involved with the development, implementation, processing of claims, policy making decisions or aspects of the AFAH Plan.

## JURISDICTION AND VENUE

62.     This Court has jurisdiction over this action pursuant to 28 U.S.C.A. §§ 1331, 1367, 2201 and 2202 as the Plaintiffs bring claims raising a federal question, supplemental jurisdiction and declaratory relief.

63.     Venue is proper in this Court pursuant to 28 U.S.C.A. §1391(a) as a number of Defendants reside in this District and a substantial part of the events giving rise to the Plaintiffs' claim occurred in this District.

## COUNT I–RICO Civil Action
(18 U.S.C. §1964(c))

64.     Plaintiffs incorporate paragraphs (1) through (63) of their Complaint as if fully rewritten herein.

65.     Defendants have individually and/or collectively acted to defraud or use false or fraudulent pretenses to induce Plaintiffs into paying thousand of dollars of premiums for insurance coverage that Defendants knew did not exist and which would not respond to claims submitted by Plaintiffs. In doing so, Defendants sent misinformation and various false representations to the Plaintiffs through the United States Postal Service in violation of 18 U.S.C. §1341.

66.     Defendants have individually and/or collectively acted to defraud or use false or fraudulent pretenses to induce Plaintiffs into paying thousand of dollars of premiums for insurance

coverage that Defendants knew did not exist and which would not respond to claims submitted by Plaintiffs.  In doing so, Defendants sent misinformation and various false representations to the Plaintiffs by wire through interstate commerce in violation of 18 U.S.C. §1343.

67.    Defendants have individually and/or collectively acted to defraud or used false or fraudulent pretenses to induce Plaintiffs into paying thousand of dollars of premiums for insurance coverage that Defendants knew did not exist and which would not respond to claims submitted by Plaintiffs.  In doing so, Defendants, through false or fraudulent pretenses, representations or promises, induced Plaintiffs and Plaintiffs' banks to have such premiums electronically transferred from Plaintiffs' banks to Defendants in violation of 18 U.S.C. §1344.

68.    The acts alleged in paragraphs (1) through (67) constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961.

69.    Defendants have received income directly or indirectly from this pattern of racketeering activity and used such income to establish and operate the AFAH Plan, which qualifies as an "enterprise" under 18 U.S.C. §1961, all of which has affected interstate commerce as evidenced by: (1) Plaintiffs' residences in Florida, Michigan and Ohio, (2) the multiple state regulatory actions taken against AFAH, Spencer & Associates and related entitles; and (3) the national websites for AFAH (http://www.americansforaffordablehealthcare.org/) and NACD (http://www.nacddiscounts.com/).  All of the foregoing is in violation of 18 U.S.C. §1962.

70.    Plaintiffs have been injured by Defendants' violation of 18 U.S.C. §1962 by the loss of thousands of dollars in insurance premiums and hundreds of thousands of dollars in insurance benefits, and therefore are entitled to bring this claim pursuant to 18 U.S.C. §1964(c).

71.     Pursuant to 18 U.S.C. §1964(c), Plaintiffs are entitled to treble damages and attorney fees as a result of Defendants's violation of 18 U.S.C. §1962.

## COUNT II–Breach of Contract

72.     Plaintiffs incorporate paragraphs (1) through (71) of their Complaint as if fully rewritten herein.

73.     The AFAH Plan constituted a valid contract between Plaintiffs and Defendants.

74.     Plaintiffs fulfilled all preconditions of coverage under the AFAH Plan and properly submitted claims for coverage under the AFAH Plan.

75.     Defendants have refused to perform their contractual obligations under the AFAH Plan.

76.     Defendants' refusal to perform their contractual obligations under the AFAH Plan has caused actual damages to Plaintiffs entitling Plaintiffs to damages from Defendants.

## COUNT III–Fraudulent Misrepresentation

77.     Plaintiffs incorporate paragraphs (1) through (76) of their Complaint as if fully rewritten herein.

78.     Defendants made multiple representations to Plaintiffs regarding the terms and scope of coverage provided under the AFAH Plan.

79.     Defendants knew that such representations were false.

80.     Defendants made such representations with the intent of misleading Plaintiffs into believing that AFAH Plan was a valid hospital indemnity insurance program with specified terms and coverages.

81.     Plaintiffs justifiably relied upon such representations to their detriment.

82.     Plaintiffs have suffered actual damages as a result of Defendants' misrepresentations regarding the AFAH Plan entitling Plaintiffs to damages from Defendants.

## COUNT IV–Negligent Misrepresentation

83.     Plaintiffs incorporate paragraphs (1) through (82) of their Complaint as if fully rewritten herein.

84.     Defendants are in the business of, and derive income from, providing insurance benefits, such as the AFAH Plan, to members of organizations, such as NACD.

85.     As such, Defendants have a duty to exercise reasonable care and competence in obtaining or communicating information about such benefits to members of such organizations, such as Plaintiffs.

86.     Defendants breached such duty to Plaintiffs by misrepresenting the terms and scope of coverage of the AFAH Plan.

87.     Plaintiffs  justifiably relied upon such misrepresentations to their detriment.

88.     Defendants' breach of their duty to Plaintiffs caused actual damages to Plaintiffs entitling Plaintiffs to damages from Defendants.

## COUNT V–Negligent Procurement of Insurance

89.     Plaintiffs incorporate paragraphs (1) through (88) of their Complaint as if fully rewritten herein.

90.      Defendants are in the business of, and derive income from, providing insurance benefits, such as the AFAH Plan, to members of organizations, such as NACD.

91.     As such, Defendants have a duty to exercise reasonable care and competence in procuring such benefits to members of such organizations, such as Plaintiffs.  Additionally, Ohio law imposes, among other duties, the following duties upon Defendants:

(A)     to refrain from fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in this state or elsewhere (Ohio Rev. Code §3905.14(B)(9));

(B)     to refrain from failing to disclose to an applicant for insurance or policyholder upon accepting a premium or an order to bind coverage from the applicant or policyholder, that the person has not been appointed by the insurer (Ohio Rev. Code §3905.14(B)(16));

(C)     to refrain from transferring or placing insurance with an insurer other than the insurer expressly chosen by the applicant for insurance or policyholder without the consent of the applicant or policyholder or absent extenuating circumstances (Ohio Rev. Code §3905.14(B)(23));

(D)     to refrain from failing to inform a policyholder or applicant for insurance of the identity of the insurer or insurers, or the identify of any other insurance agent of licensee known to be involved in procuring, placing, or continuing the insurance for the policyholder or applicant, upon the binding of the coverage (Ohio Rev. Code §3905.14(B)(24));

(E)     to refrain from soliciting, procuring an application for, or placing, either directly or indirectly, any insurance policy when the person is not authorized under Ohio Rev. Code Chapter 3905 to engage in such activity (Ohio Rev. Code §3905.14(B)(30));

(F)     to refrain from soliciting, selling, or negotiating any product or service that offers benefits similar to insurance but is not regulated by the superintendent, without fully disclosing, orally and in writing, to the prospective purchaser that the product or service is not insurance and is not regulated by the superintendent (Ohio Rev. Code §3905.14(B)(31)):

(G)     to refrain from knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverage at issue (OAC §3901-1-07(C)(1));

(H)    to acknowledge pertinent communication with respect to claims under insurance policies in writing, or by other appropriate means, within fifteen days of receiving notice of a claim in writing or otherwise (OAC §3901-1-07(C)(2));

(I)    to adopt and implement reasonable procedures to commence an investigation of any claim filed by either a first party or third party claimant within twenty-one days of receipt of notice of claim (OAC §3901-1-07(C)(4));

(J)    to mail or furnish claimant a notification of all items, statements and forms, if any which the insurer reasonably believes will be required of such claimant, within fifteen days of receiving notice of claim, unless the insurer, based on the information then its possession does not yet know all such requirements, then such notification shall be sent, within a reasonable time (OAC §3901-1-07(C)(5));

(K)    to offer first party . . . claimants . . . who have made claims which are fair and reasonable and in which liability is reasonably clear, amounts which are fair and reasonable as shown by the insurer's investigation of the claim, providing the amounts so offered are within policy limits and in accordance with policy provisions (OAC §3901-1-07(C)(6));

(L)    to refrain from attempting settlement or compromise of claims for less than the amount which the insureds had been led reasonably to believe they were entitled to, by written or printed advertising material accompanying or made part of any application (OAC §3901-1-07(C)(10));

(M)    to advise first party claimants in writing of the acceptance or rejection of the claim within twenty-one days after receipt by the insurer of a properly executed proof of loss (OAC §3901-1-07(C)(12));

(N)    to adopt and implement reasonable standards for the proper handling of written communications, primarily expressing grievances, received by the insurer from insureds or claimants (OAC §3901-1-07(C)(15)).

92.    Defendants breached such duty to Plaintiffs by failing to procure insurance benefits for Plaintiffs in accordance with the terms and scope of coverage of the AFAH Plan.

93.    Defendants' breach of their duty to Plaintiffs caused actual damages to Plaintiffs entitling Plaintiffs to damages from Defendants.

## COUNT VI–Promissory Estoppel

94.     Plaintiffs incorporate paragraphs (1) through (93) of their Complaint as if fully rewritten herein.

95.     Defendants are in the business of, and derive income from, providing insurance benefits, such as the AFAH Plan, to members of organizations, such as NACD.

96.      As such, Defendants have a duty to exercise reasonable care and competence in procuring such benefits to members of such organizations, such as Plaintiffs.

97.     Defendants made clear and unambiguous promises to Plaintiffs about the terms and scope of coverage of the AFAH Plan.

98.     Under such circumstances, it was reasonable and foreseeable that Plaintiffs would rely upon Defendants' promises.

99.     Plaintiffs did, in fact, rely upon the Defendants' clear and unambiguous promises about the terms and scope of coverage of the AFAH Plan.

100.     Plaintiffs were detrimentally affected by their reliance upon Defendants' clear and unambiguous promises about the terms and scope of coverage of the AFAH Plan and suffered actual damages as a result of such detrimental reliance upon Defendants' promises entitling Plaintiffs to damages from Defendants.

## COUNT VII–Declaratory Judgment

101.     Plaintiffs incorporate paragraphs (1) through (100) of their Complaint as if fully rewritten herein.

102.     The AFAH Plan constituted a valid contract between Plaintiffs and Defendants.

103.    Plaintiffs fulfilled all preconditions of coverage under the AFAH Plan and properly submitted claims for coverage under the AFAH Plan.

104.    Defendants have refused to perform their contractual obligations under the AFAH Plan.

105.    An actual, real and substantial controversy exists between the parties as to whether the AFAH Plan provides coverage for the Hospital Claims and the Office Visit Claims requiring judicial declaration setting forth the respective rights and obligations of the parties under the AFAH Plan.

### COUNT VIII–Bad Faith

106.    Plaintiffs incorporate paragraphs (1) through (105) of their Complaint as if fully rewritten herein.

107.    The AFAH Plan constituted a valid contract between Plaintiffs and Defendants.

108.    Plaintiffs fulfilled all preconditions of coverage under the AFAH Plan and properly submitted claims for coverage under the AFAH Plan.

109.    Defendants have refused to perform their contractual obligations under the AFAH Plan.

110.    Defendants lack a reasonable justification for their refusal to comply with their contractual obligations under the AFAH Plan.

111.    Plaintiffs have suffered actual damages as a result of Defendants' bad faith denial of the Hospital Claims and the Office Visit Claims entitling Plaintiffs to damages from Defendants.

## COUNT IX–Liability for Criminal Conduct
(Ohio Rev. Code §2307.60)

112.     Plaintiffs incorporate paragraphs (1) through (111) of their Complaint as if fully rewritten herein.

113.     Ohio Rev. Code §2307.60(A)(1) provides that anyone injured by a criminal act may recover damages from the offenders.

114.     Ohio Rev. Code §2913.02(A)(3) makes it a criminal act for anyone, with purpose to deprive the owner of property or services, to knowingly obtain or exert control over the either the property or services of another by deception.

115.     Ohio Rev. Code §2921.13(A)(8) makes it a criminal act for anyone to knowingly make a false statement in writing with the purpose to induce another to provide the offender with any valuable benefit when the person to whom the statement is directed relies upon it to that person's detriment.

116.     Ohio Rev. Code §2921.13(A)(9) makes it a criminal act for anyone to knowingly make a false statement when the statement is made with purpose to commit or facilitate the commission of a theft offense.

117.     Ohio Rev. Code §2923.02(A) makes it a criminal act for anyone, purposely or knowingly, to engage in conduct that if successful would constitute or result in a criminal offense.

118.     Ohio Rev. Code §2923.03(A) makes it a criminal act for anyone, acting with the kind of culpability required for the commission of an offense to: (a) solicit or procure another to commit the offense; (2) aid or abet anther in committing the offense; or (c) cause an innocent or irresponsible person to commit the offense.

119.    Ohio Rev. Code §2901.23(A)(4) provides that an organization may be convicted of a criminal act if the criminal act was authorized, requested, commanded, tolerated, or performed by the board of directors, trustees, partners, or by a high managerial officer, agent or employee acting in behalf of the organization and within the scope of his or her office or employment and acting with the with kind of culpability otherwise required for the commission of the offense.

120.    Ohio Rev. Code §2901.24 provides that an officer, agent or employee of an organization as defined in Ohio Rev. Code §2901.23 may be convicted for an offense committed by such organization, if he or she acts with the kind of culpability required for the commission of the offense if either the following apply: (a) in the name of the organization or in its behalf, he or she engages in conduct constituting the offense, or causes another to engage in such conduct, or tolerates such conduct when it is of a type for which he or she has direct responsibility; or (b) he or she has primary responsibility to discharge a duty imposed on the organization by law, and such duty is not discharged.

121.    Defendants have individually and collectively acted to defraud Plaintiffs and deprive Plaintiffs of thousands of dollars of insurance premiums in exchange for worthless, non-existent insurance coverage that would not pay any claims.  In doing so, Defendants have individually and collectively violated Ohio Rev. Code §§2913.02(A)(3), 2921.13(A)(8), 2921.13(A)(9), 2923.02(A), 2923.03(A), 2901.23(A)(4) and 2901.24.

122.    Plaintiffs have suffered actual damages as a result of Defendants' individual and collective criminal actions, and pursuant to Ohio Rev. Code §2307.60(A)(1), Plaintiffs are entitled to recover such damages from Defendants individually and collectively.

## COUNT X–Individual and Vicarious Liability

123.    Plaintiffs incorporate paragraphs (1) through (122) of their Complaint as if fully rewritten herein.

124.    At all times pertinent to the allegations set forth above, the individual Defendants were acting in the course and scope of their employment, agency or authority for the organizational Defendants, and in a manner to advance the pecuniary interests of the organizational Defendants even if the individual Defendants knew or intended that Plaintiffs would be harmed,  such that the organizational Defendants are vicariously liable for the actions of the individual Defendants.

125.    Alternatively, at all times pertinent to the allegations set forth above, the Defendants conspired to defraud Plaintiffs and deprive Plaintiffs of thousands of dollars of insurance premiums in exchange for worthless, non-existent insurance coverage, such that each conspirator is liable for the individual and collective actions of the others even if such conspirators have not been named as parties to this action.

126.    Alternatively, at all times pertinent to the allegations set forth above, the Defendants have individually and collectively acted to defraud Plaintiffs and deprive Plaintiffs of thousands of dollars of insurance premiums in exchange for worthless, non-existent insurance coverage, and the organizational Defendants were so-controlled or dominated by the individual Defendants to commit that fraud that any corporate structure should be disregarded and the individual Defendants owning or controlling the organizational Defendants are personally liable for damages caused by organizational Defendants.

127.    Based upon the foregoing, Plaintiffs are entitled to damages from the Defendants.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants as follows:

(a)    declaring that the AFAH Plan provides coverage with respect to the Hospital Claims and the Office Visit Claims;

(b)    awarding compensatory damages, treble damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

(c)    granting such other relief as the Court deems just and proper.

Respectfully submitted,


*/s/ Richard M. Garner*
RICHARD M. GARNER (0061734)
Email: rgarner@davisyoung.com
BEVERLY A. ADAMS (0074958)
Email:  badams@davisyoung.com
DAVIS & YOUNG
1200 Fifth Third Center
600 Superior Avenue, East
Cleveland, OH 44114
Phone:  (216) 348-1700
Fax: (216) 621-0602
*Counsel for Plaintiffs*

34

## <u>JURY DEMAND</u>

A trial by jury is hereby requested on behalf of the Plaintiffs on issues for which Plaintiffs are entitled to a jury.

Respectfully submitted,

*/s/ Richard M. Garner*
RICHARD M. GARNER (0061734)
Email: rgarner@davisyoung.com
BEVERLY A. ADAMS (0074958)
Email:  badams@davisyoung.com
DAVIS & YOUNG
1200 Fifth Third Center
600 Superior Avenue, East
Cleveland, OH 44114
Phone:  (216) 348-1700
Fax: (216) 621-0602
*Counsel for Plaintiffs*

RMG\HOSPITAL INDEMNITY CASES\complaint