**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BAILEY BROADBENT, et al.,

    Plaintiffs,

vs.

AMERICAN FOR AFFORDABLE
HEALTHCARE INC., et al.,

    Defendants.

Case No. 1:10-cv-943

Dlott, C.J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Plaintiffs' motion for partial summary judgment (Doc. 325), Defendant Lawler's cross motion for judgment (Doc. 337) and the parties' responsive memoranda. (Docs. 333-336, 340, 344, 350). Also before the Court is Defendants Gary Bastie, Roberta B. Bastie, Jack M. Winebrenner, L.M. Winebrenner's pro se motion to dismiss. (Doc. 352). A hearing on the pending motions was held on October 15, 2013. Attorney Kurt Anderson appeared for Plaintiffs. Attorney David Martin appeared the for Spencer Defendants. Defendant Paul Olzeski appeared *pro se.* Pro Se Defendants Wayne Delawler, Jack Winebrenner, Roberta Bastie and Gary Bastie appeared by telephone. For the reasons outlined below, the undersigned finds that Defendant's motion to dismiss and the parties' motions for summary judgment are not well-taken.

**I. Background**

On December 28, 2010, Plaintiffs Bailey Broadbent, Nicholas Berger, Melanie Berger, Lee Ann Schoenrock, Joseph Tritola, Kevin Weiler, Sr., Jennifer Weiler, Jacqueline Weiler, and Colleen Weiler (collectively "Plaintiffs") commenced this action against numerous Defendants for violations of federal and state law arising out of an alleged

fraudulent insurance scheme. (Doc. 1). That same day, Plaintiffs' moved for an ex parte temporary restraining order and order to show cause why a preliminary injunction should not issue against Defendants Americans for Affordable Healthcare, Inc. ("AFAH"), National Association of Consumers Direct ("NACD"), Spencer & Associates, LLC, Integrated Insurance Marketing, Inc. ("IIM"), CEO Clubs, Inc., Bruce Spencer, Christie Spencer, and Paul J. Olzeski. (Docs. 1-3.) On January 3, 2011, the Court granted Plaintiffs' motion for a temporary restraining order. Following a show cause hearing on January 12, 2011, the Court issued a Preliminary Injunction against Defendants AFAH, NACD, Spencer & Associates, LLC, IIM, CEO Clubs, Inc., Bruce Spencer, Christie Spencer, and Paul J. Olzeski. (Doc. 12).

Thereafter, Plaintiffs filed an amended complaint on April 15, 2011. (Doc. 23). The 60 page amended complaint asserts fourteen causes of action against more than forty known defendants and up to 100 unknown John Doe Defendants. The factual allegations are summarized as follows:

Plaintiffs all suffer from cystic fibrosis, which often results in lengthy hospital stays. Based on their condition, Plaintiffs became interested in hospital indemnity insurance programs that would provide cash payments for a portion of the time that they were hospitalized. In order to gain access to such benefits, Plaintiffs joined consumer membership associations that offered access to such programs to its members. However, Plaintiffs allege that the hospital indemnity insurance programs offered by such membership organizations were never properly underwritten by legitimate insurance companies. Thus, although Plaintiffs made the required monthly premium payments and filed valid claims under the terms of the relevant policies, no claims were ever paid.

In light of the foregoing, Plaintiff's amended complaint asserts the following claims against the Defendants individually and collectively:

>     Count I - RICO Civil Action
>     Count II - Breach of Contract (AFAH Plan)
>     Count III - Breach of Contract (NACHP Supplement)
>     Count IV - Fraudulent Misrepresentation
>     Count V - Negligent Misrepresentation
>     Count VI - Negligent Procurement of Insurance
>     Count VII- Promissory Estoppel
>     Count VIII- Unjust Enrichment
>     Count IX - Declaratory Judgment
>     Count X - Bad Faith
>     Count XI - Liability for Criminal Conduct
>     Count XII - Conversion
>     Count XIII - Intentional Interference with Contract
>     Count XIV - Individual and Vicarious Liability

(Doc. 23).[1]

On November 17, 2011, the Clerk entered default against the following Defendants: Americans for Affordable Healthcare, Inc.; Benetrust Corp.; Craig Cooke; Donald Densmore; IRG Brokerages, LLC; Gary L. Karns; Karns, Inc.; Steven K. McLaughlin; National Alliance of Consumers and Healthcare Professionals; National Association of Consumers Direct; Nuera Direct, Inc; Nuera Meds, Inc.; William Prouty; RX Card Services, Inc. and Robert Stehlin. (Doc. 188). Thereafter, on March 14, 2013 an R&R was issued granting Default Judgment as to those Defendants. That R&R remains pending.

On December 5, 2012, Plaintiffs filed Applications to Clerk for entry of default against Association for Independent Managers, Inc; Integrated Insurance Marketing, Inc.; Louis DeLuca; Real Benefits Association; Tannile Ortiz; Viking Administrators, Inc. (Doc. 287). The Clerk has yet to enter default. Currently, the docket reflects the remaining active

---

[1] Notably, Plaintiffs' also filed a second amended complaint on January 16, 2012, adding additional supporting factually allegations. (Doc. 201). Plaintiffs' asserted causes of action remained unchanged.

defendants as follows: Gary Bastie, Roberta Bastie, Jack Winebrenner, L.M. Winebrenner, Paul Olzeski, Spencer and Associates, Bruce Spencer, Christie Spencer, David Spencer and Wayne Lawler.

## II. Relevant Facts Relating to the Pending Cross-Motions for Judgment

*Association for Independent Managers*

Plaintiffs' claims arise out of Plaintiffs Melanie Berger, K. Weiler and J. Weiler's membership with Association for Independent Managers (AFIM). The Weilers joined AFIM to have access to AFIM's hospital indemnity program. AFIM was created in the mid-1970's by Defendant Jack Winebrenner. (Doc. 85). For nearly 30 years AFIM provided advice and education to small businesses regarding payroll, accounting, tax, regulatory compliance, insurance, marketing, and other aspects of business management. *Id.*

Defendant Gary Bastie took over daily operations of AFIM in 2002. During the relevant time from 2006 through 2010, Defendants Gary Bastie, Roberta Bastie, Jack Winebrenner and Larry Winebrenner were all officers AFIM. Defendant Lawler was AFIM's compliance attorney. Near the end of 2006, Louis DeLuca ("DeLuca") proposed packaging AFIM memberships with his hospital indemnity insurance plan. Because DeLuca's insurance agency was based in New York, he proposed that he market and sell the packages and forward AFIM membership dues to the AFIM office in Florida. Hospital indemnity claims would be processed through DeLuca's Insurance Resource Group ("IRG"). Thereafter, DeLuca obtained a business partner, Gary Karns, who helped to run AFIM Health Plans. DeLuca not only sold AFIM memberships, he also created the Association of Independent Managers ("AIM"); CEO Clubs, Inc.; and Integrated Insurance

Marketing ("IIM") which did business as AIM Health Benefits/AIM Health Benefits Plan/AIM Health Solutions/AIM Health Solutions Plan.

Initially, DeLuca obtained hospitalization indemnity policies issued in AFIM's name through existing, reputable insurance companies, American Medical and Life Insurance Company ("AMLI"), and NOVA Casualty Company ("NOVA"). (See Doc. 85-1, Ex. 6). However, in July 2009, NOVA refused to insure further AFIM memberships, issued a Cease and Desist letter to DeLuca, and notified the New York Department of Insurance of DeLuca's improper claims administration and possible fraud. DeLuca promptly began seeking other insurance.

Ultimately, DeLuca began selling insurance programs to individuals that were not properly underwritten. In other words, he was selling insurance coverage that did not exist. DeLuca did not accurately report the full extent of his membership sales to the AFIM Officers. DeLuca reported 7,000 new AFIM memberships, but the AFIM Officers admit that later state insurance investigations have suggested as many as 12,000 members. (*Id.*; Doc. 201, Ex. 5). DeLuca also offered additional memberships and "supplemental" insurance programs to "AIM" members, such as the National Alliance of Consumers and Healthcare Professionals (NACHP) Supplement, which were purportedly only gimmicks to draw additional premiums.

The AFIM Officers claim that on January 27, 2010, both Gary Bastie and the Association's compliance attorney, Wayne Lawler, sent Cease and Desist orders to DeLuca, advising he was no longer authorized to sell AFIM memberships or collect dues. (Doc. 85, Ex. 2) The Cease and Desist letters assert that the AFIM memberships themselves were being retroactively cancelled, effective November 30, 2009, for failure to

"receive" premiums. *Id.* The AFIM Officers contend they totally disconnected themselves from any conduct by DeLuca, and therefore have no responsibility for his actions.

It was not until February and March, 2010, that Plaintiffs discovered that their insurance coverage lapsed in July 2009 (when NOVA refused to insure AFIM members). The discovery was delayed because premiums were still being deducted for membership and insurance.

*Americans for Affordable Healthcare and AFIM*

In 2008, Defendant Lawler became familiar with Bruce Spencer, who opened an insurance agency in Springfield, OH known as Spencer and Associates. Defendant Olzeski, was employed by Spencer and Associates as a licensed insurance agent. Purportedly at Lawler's initiation, Spencer purchased the ownership rights and corporate records to Association for Affordable Healthcare, a memberships based insurance plan offering a hospital indemnity plan. The initial underwriter of Spencer's hospital indemnity insurance backed out of the arrangement, leaving no marketable insurance plan. Thereafter, Defendant Olzeski recommended that Spencer use AIM Health plans, through DeLuca's insurance company.

Spencer understood that "AIM Health Plans" was not itself an insurer, but believed it was a licensed third party administrator ("TPA") for AIM members. Based on guidance from Lawler, Spencer essentially sub-contracted TPA services for AFAH to DeLuca, and soon thereafter also for members of National Association of Consumers Direct (NACD) and Real Benefits Association (RBA) through an arrangement where AFAH, NACD, and RBA members were considered AIM members. Spencer billed AFAH, NACD, and RBA

-6-

members their dues and insurance premiums, and passed on the premiums to DeLuca and AIM. (Spencer Dep., 171-172, 208).

Bruce Spencer testified that he rarely spoke with DeLuca and allowed Paul Olzeski to handle that relationship. Olzeski's daughter, Tanille Ortiz, was the office manager in charge of AFAH operations. (Spencer Dep., pp. 75-77). Spencer was only in the office approximately four days each month. (Spencer Dep., p. 76). Bruce Spencer further testified that after their termination, he discovered "large amounts of theft, embezzlement, fraud, forgery, you name it, were discovered on behalf of Tanille Ortiz and her father, Paul Olzeski…." (Spencer Dep., p. 17:19-24). As a result, there was neither insurance nor funds with Spencer to pay the Plaintiffs' claims. Thus, Plaintiffs' discovered that the hospital indemnity plans under AFAH were never properly underwritten and no coverage existed.

Plaintiffs now move this Court for partial summary judgment against Defendants Gary Bastie, Roberta Bastie, Jack Winebrenner, Larry Winebrenner; Wayne Lawler; Bruce Spencer; Spencer & Associates, LLC; and Paul Olzeski on Plaintiff's claims for Breach of Contract, Negligent Misrepresentation, Negligent Procurement of Insurance and Breach of Fiduciary Duty. (Doc. 325) Plaintiffs also seek joint and several liability. Gary and Roberta Bastie, Defendant Lawler, and the Spencers filed responses to Plaintiffs' motion. The Winebrenner's and Olzeski did not respond to the motion, although they appeared at the hearing and made statements to the Court. Defendant Lawler also filed his own cross motion, asserting that he is entitled to judgment as a matter of law. (Doc. 337)

Lawler's cross motion for summary judgment asserts that he is entitled to judgment as a matter of law because Plaintiffs have failed to establish that he contracted with any of

Plaintiffs or made any representations or false statements to Plaintiffs. Lawler further asserts that as an attorney, he has qualified immunity from liability to third parties for acts or omission concerning the representations of a client.

### III. Standard of Review

Summary judgment is proper "if the *movant* shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). A court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir.2003) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.,* 328 F.3d at 873 (quoting *Anderson,* 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a "genuine" dispute means that there must be more than some

metaphysical doubt as to the material facts). The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

**IV. Factual Disputes Preclude Summary Judgment**

Plaintiffs' motion for partial summary judgment asserts that by creating, approving, and enabling DeLuca, Karns, and Olzeski's alleged unsupervised control of membership dues, insurance premiums, and insurance claims, Defendants Gary Bastie, Roberta Bastie, Jack Winebrenner, L.M. Winebrenner, Paul Olzeski, Spencer and Associates, Bruce Spencer, Christie Spencer, David Spencer and Wayne Lawler breached their duties of care to the associations and their members, including the Plaintiffs, and are jointly and severally liable for the Plaintiffs' damages.  As explained below, Plaintiff's contentions, however, require to the Court to make factual determinations that are not established by the evidence of record.  As such, summary judgment cannot be granted.

*A. Vicarious Liability*

Plaintiffs' motion for summary judgment relies on the assumption that they are entitled to judgment as a matter of law because Defendants are vicariously liable for the actions of Defendant DeLuca.[2] (Doc. 325 at 14-15).  Plaintiffs' contend that it is a fundamental principal of the law of agency that a principal is liable for the acts of an agent where the principal has granted actual authority to the agent to enter the transactions

---

[2] As noted above Defendant DeLuca has not answered this lawsuit despite being properly served. An application for Default as to Defendant DeLuca is currently pending before the Court. (See Doc. 287).

complained of. *Master Consol. Corp. v. BancOhio Nat'l Bank*, 61 Ohio St. 3d 570, 574, 575 N.E.2d 817 (1991). Plaintiffs, however, fail to present sufficient evidence that the relevant Defendants' granted DeLuca actual authority to engage in the acts of fraud alleged by Plaintiffs.

*B. Breach of contract*

"There are four main elements of a breach of contract claim: (a) the existence of a contract; (b) performance by the plaintiff; (c) breach by the defendant; and (d) damage or loss to the plaintiff." *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. Appx. 319, 322, 2002 WL 193935 (6th Cir. 2002). Plaintiffs assert that they are entitled to judgment as a matter of law against the relevant Defendants because the Defendants directly created, authorized, and/or ratified DeLuca's interactions with the Plaintiffs. As such, Plaintiffs' contend that Defendants are liable for DeLuca's failure to fulfill the contractual obligations.

With respect to the Bastie Defendants, Plaintiffs have failed to show that they had membership in AFIM, *i.e.* the existence of a contract. Instead, it appears Plaintiffs were members of DeLuca's AIM plan. Plaintiffs have admitted in their complaint that they had membership in AIM to have access to hospital indemnity insurance. Notably, the AIM/NOVA plan was only in effect from August 1, 2009, to August 1, 2010. Plaintiffs have failed to show they had a valid contract with AFIM or that they were entitled to insurance payments after August 1, 2010.

Plaintiffs claim that NACHP premiums were still deducted after they requested cancellation. However, Plaintiffs have produced no evidence that they had a NACHP plan or that premiums were deducted. Plaintiffs have produced no evidence connecting these Defendants to the NACHP plan. Therefore, summary judgment is not appropriate against

the Bastie Defendants on Plaintiff's breach of contract claims.

Next, as to the Spencers and Spencer & Associates, Bruce Spencer's deposition establishes that Spencer & Associates was a third party administrator for AFAH. While Plaintiffs have submitted sufficient evidence that Defendants Paul Olzeski, Bruce Spencer, and Spencer & Associates, LLC were involved with DeLuca, Plaintiffs have not submitted sufficient evidence showing that these Defendants collected money for DeLuca/IIM/IRG/AIM from these Plaintiffs or that a contract existed between them. Therefore, summary judgment is not appropriate against Olzeski, Spencer, and Spencer & Associates on Plaintiffs' breach of contract claims.

*C. Negligent Misrepresentation*

Ohio law recognizes a cause of action for negligent misrepresentation within a business transaction. *Carpenter v. Long*, 196 Ohio App.3d 376, 396, 963 N.E.2d 857 (Ohio Ct.App.2011). As one Ohio court has described:

> "The elements of negligent misrepresentation are as follows: 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " "A negligent misrepresentation occurs when one 'supplies false information for the guidance of others.'] In other words, a '[n]egligent misrepresentation does not lie for omissions; there must be some affirmative false statement.

*Id.* (internal citations omitted).

Plaintiffs' contend that Defendants are liable for negligent misrepresentation because they placed DeLuca in position and authorized him to communicate with the Plaintiffs on precisely the subject matters in which he deceived them. (Doc. 325 at 17-18).

Plaintiffs, however, fail to present any evidence of any "affirmative false statements[s] made by Defendants to Plaintiffs. As such, the undersigned cannot conclude that Plaintiffs are entitled to judgment as a matter of law with respect to this claim.

   D. *Negligent Procurement of Insurance and Breach of Fiduciary Duty*

Insurance agents and insurance claims administrators owe fiduciary duties to their insured, which are actually codified in O.R.C. 3905.14 and O.A.C. 3901-1-07. As one Ohio court found:

> Whether the defendant owed a duty to the plaintiffs presents a legal question that depends upon the foreseeability of the plaintiffs' injury. An injury is foreseeable if a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. In the insurance context, an action for negligence may be based upon an insurance agent's failure to procure insurance. An agent will be held liable if, as a result of his or her negligent failure to perform that obligation [to procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking.

*Carpenter v. Scherer-Mountain Ins. Agency*, 135 Ohio App.3d 316, 326, 733 N.E.2d 1196, 1203 (4th Dist.1999) (citations omitted).

In support of their motion for summary judgment, Plaintiffs contend that Defendants knew that legitimate insurance was essential to their plans, and relied upon DeLuca to obtain such insurance. DeLuca's failure to accomplish what the Defendants engaged him to do, and what the Plaintiffs relied upon and paid for, makes the Defendants liable for DeLuca's negligent failure to procure insurance. However, Plaintiffs fail to provide sufficient evidence supporting this contention. Notably, Plaintiffs offer only the deposition testimony of Bruce Spencer, wherein he admits that, as an insurance agent, he had the responsibility to determine whether or not a policy issued and whether or not the policy met the needs

of what was being administered. (Doc. 326, Spencer Dep at 159). However, Spencer goes on to testify that he did not see the policies that were generated under AFAH by DeLuca. *Id.* Thus, according to Spencer's testimony he could not determine whether the policies issued by DeLuca were proper because he never saw them. As detailed above, Spencer essentially sub-contracted TPA services for AFAH to DeLuca, however, he rarely spoke to DeLuca and was not in the office full-time. It could be argued that Spencer had an obligation to inquire about the validity of the polices issued by DeLuca. However, there has been no evidence presented that Spencer was put on notice of DeLuca's bad acts which would have required further inquiry by Spencer. Additionally, Plaintiffs offer no evidence relating to the Bastie Defendants alleged misrepresentation. Accordingly, Plaintiffs have failed to show that they are entitled to judgment as a matter of law with respect to this claim.

*E. The parties cross-motions for judgment relating to Defendant Lawler are not well-taken*

Plaintiffs also move for summary judgment against Defendant Lawler on their claims of breach of contract, negligent misrepresentation, negligent procurement of insurance, and breach of fiduciary duty. Plaintiffs argue that, as counsel for AFAH, Spencer & Associates, LLC, and AFIM, Lawler breached fiduciary duties to the members who were in privity with AFAH, Spencer and AFIM. (Doc. 325). In response, Defendant Lawler filed his own motion for summary judgment arguing, *inter alia*, that he owed no duty to the Plaintiffs; his services with AFAH, Bruce Spencer, and Spencer & Associates, LLC (collectively "AFAH") were terminated before Plaintiffs' causes of action or damages accrued; and he was not engaged by AFIM until after Plaintiffs' damages had accrued. (Doc. 347). Defendant

Lawler further asserts that Plaintiffs' Complaint allegedly fails to state a claim for relief against him.[3]

Upon careful review, the evidence is insufficient to establish that either party is entitled to judgment as a matter of law. The fact that Lawler represented AFIM does not, in itself, prove he was one "of the masterminds behind the AFAH Plan scam." Plaintiffs have also presented evidence that Lawler prepared a transfer agreement which transferred AFAH to Spencer & Associates. Again, legal representation in and of itself in the absence of privity, is not enough to prove he is vicariously liable. As noted by Defendant Lawler, "an attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third party is in privity with the client or the attorney acts maliciously". *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636 (Ohio 1987).

The undersigned recognizes that lawyers for associations owe direct fiduciary duties to the members of those associations and are liable to such members when their self-serving actions damage the rights and interests of the members. *Arpadi v. First MSP Corp.*, 68 Ohio St.3d 453, 458, 1994-Ohio-491, 628 N.E.2d.1335 (1994). Those persons to whom a fiduciary duty is owed are in privity with the fiduciary such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates. *Elam v. Hyatt Legal Serv*. 44 Ohio St.3d 175,

---

[3] Lawler also argues that Plaintiffs' motion for partial summary judgment should be denied because he was not properly served with pleadings, motions and discovery notices, including the deposition of Bruce Spencer. In response, Plaintiff asserts that Lawler was properly served with all pleading and further asserts that Lawler never answered the Second Amended Complaint and is in default. However, because the parties have activity litigated this matter, such assertions are not well-taken.

541 N.E.2d 616 (1989). Plaintiffs contend that they are in privity with the associations which they joined, and also with Spencer as third party administrator of Plaintiffs' claims. However, as detailed above, whether the Bastie's, Winebrenner's, Spencer's and/or Spencer and Associates owed fiduciary duties to Plaintiffs, remains disputed and cannot be resolved on summary judgment. As such, the Court cannot find that Defendant Lawler was in privity with the Plaintiffs. Given the current record before the Court, the undersigned is left with no choice but to recommend denial the parties' cross motions for summary judgment.

**V**. **Defendants Gary Bastie, Roberta B. Bastie, Jack M. Winebrenner, L.M. Winebrenner's motion to dismiss (Doc. 352) is not well-taken.**

Defendants also move to dismiss Plaintiffs' claims against them, raising the same if not similar arguments raised in their previous motions to dismiss. As in their prior motions, these Defendants assert, *inter alia*, that the allegations contained in the second amended complaint are false, unsupported, and amount to a fraud on the Court. As such, Defendants assert that the second amended complaint should be dismissed. (Doc. 352). However, such arguments were addressed and rejected by the Court in its Orders denying these Defendants motion to dismiss and motion for summary judgment. (Docs. 275, 311). Moreover, the motion was filed nearly 4 months after the dispostive motion deadline of April 30, 2013, and is therefore untimely. Accordingly, the undersigned finds that Defendants' motion to dismiss (Doc. 325) should be denied.

**VI. Conclusion**

For the foregoing reasons, the undersigned **RECOMMENDS** that: (1) Plaintiffs' motion for partial summary judgment (Doc. 325) be **DENIED**; (2) Defendant Lawler's motion for summary judgment (Doc. 337) be **DENIED**; (3) Defendants Gary Bastie, Roberta B. Bastie, Jack M. Winebrenner, L.M. Winebrenner's motion to dismiss be **DENIED**; and (4) and this matter proceed to trial.

*s/Stephanie Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| BAILEY BROADBENT, et al., | Case No. 1:10-cv-943 |
| Plaintiffs, | |
| vs. | Dlott, C.J. |
| | Bowman, M.J. |
| AMERICAN FOR AFFORDABLE HEALTHCARE INC., et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).